## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| EDUARDO COSTA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. _____ |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| DELPHI TECHNOLOGIES PLC, TIMOTHY M. | ) | |
| MANGANELLO, RICHARD F. DAUCH, ROBIN | ) | |
| J. ADAMS, JOSEPH S. CANTIE, NELDA J. | ) | |
| CONNORS, GARY L. COWGER, DAVID S. | ) | |
| HAFFNER, DR. HELMUT LEUBE, HARI N. | ) | |
| NAIR, and MARYANN WRIGHT, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, Eduardo Costa, by his undersigned attorney, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against Delphi Technologies PLC ("Delphi" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Delphi, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff's claims arise in connection with the proposed acquisition of Delphi by BorgWarner Inc. ("BorgWarner") (the "Proposed Transaction").

2.      On January 28, 2020, Delphi entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which each Delphi shareholder will be entitled to receive 0.4534 shares of BorgWarner common stock for each share of Delphi common stock held (the "Merger Consideration").

3.      On March 11, 2020, in order to convince Delphi public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) financial projections for Delphi, BorgWarner, and the combined company; and (ii) the valuation analyses performed by Delphi's financial advisor, Goldman Sachs International ("Goldman Sachs") regarding the Proposed Transaction.

5.      The Proposed Transaction is expected to close in the second half of 2020, so the special meeting of Delphi's shareholders to vote on the Proposed Transaction is imminent (the "Shareholder Vote").  Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so Delphi's shareholders can properly exercise their corporate voting rights.

6.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Delphi's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

//

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

8.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice.  "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985).  "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

9.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391 because Defendants are found or are inhabitants or transact business in this District.  Indeed, Delphi's common stock trades on the New York Stock Exchange ("NYSE"), which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases). Further, the Company's proxy solicitor, Innisfree M&A Incorporated is located in this District at 501 Madison Avenue, NY, NY 10022.  Last, the Company's legal counsel regarding the Proposed Transaction, Kirkland & Ellis LLP is located in this District at 601 Lexington Avenue, NY, NY 10022.

//

//

## PARTIES

10.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Delphi common stock.

11.     Defendant Delphi is a public company incorporated under the laws of New Jersey with principal executive offices located at One Angel Court, London, UK. Delphi's common stock is traded on the NYSE under the ticker symbol "DLPH."

12.     Defendant Timothy M. Manganello is, and has been at all relevant times, a director of the Company and Chairman of the Board.

13.     Defendant Richard F. Dauch is, and has been at all relevant times, a director of the Company and Chief Executive Officer.

14.     Defendant Robin J. Adams is, and has been at all relevant times, a director of the Company.

15.     Defendant Joseph S. Cantie is, and has been at all relevant times, a director of the Company.

16.     Defendant Nelda J. Connors is, and has been at all relevant times, a director of the Company.

17.     Defendant Gary L. Cowger is, and has been at all relevant times, a director of the Company.

18.     Defendant David S. Haffner is, and has been at all relevant times, a director of the Company.

19.     Defendant Dr. Helmut Leube is, and has been at all relevant times, a director of the Company.

20.     Defendant Hari N. Nair is, and has been at all relevant times, a director of the Company.

4

21.     Defendant MaryAnn Wright is, and has been at all relevant times, a director of the Company.

22.     The Defendants identified in paragraphs 12 through 21 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Delphi, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

23.     Delphi develops designs and manufactures vehicle propulsion systems. The Company supplies its products to original equipment manufacturers. The Company's portfolio includes gas and diesel fuel injection systems, actuators, valvetrain products, sensors, electronic control modules, and power electronics technologies.

24.     BorgWarner is engaged in providing technology solutions for combustion, hybrid and electric vehicles. The Company's segments include Engine and Drivetrain. The Engine segment's products include turbochargers, timing devices and chains, emissions systems, and thermal systems. The Engine segment develops and manufactures products for gasoline and diesel engines, and alternative powertrains. The Drivetrain segment's products include transmission components and systems, all-wheel drive torque transfer systems, and rotating electrical devices.

25.     On January 28, 2020, the Board caused the Company to enter into the Merger Agreement with BorgWarner, whereby Delphi shareholders will be entitled to receive 0.4534 shares of BorgWarner common stock for each share of Delphi common stock owned.

26.      According to the January 28, 2020, joint press release announcing the Proposed Transaction:

### *BorgWarner to Acquire Delphi Technologies in All-Stock Transaction to Strengthen Propulsion Systems Leadership*

*Auburn Hills, Michigan & London, UK*, January 28, 2020 – BorgWarner Inc. (NYSE: BWA) and Delphi Technologies PLC (NYSE: DLPH) today announced that they have entered into a definitive transaction agreement under which BorgWarner will acquire Delphi

Technologies in an all-stock transaction that values Delphi Technologies' enterprise value at approximately $3.3 billion.

The acquisition would strengthen BorgWarner's power electronics products, capabilities and scale. Combining with Delphi Technologies is consistent with BorgWarner's evolution towards the propulsion market of the future and would enable BorgWarner to maintain flexibility across combustion, hybrid, and electric propulsion (C-H-E).

Under the terms of the agreement, which has been approved by the boards of directors of both companies, Delphi Technologies stockholders would receive a fixed exchange ratio of 0.4534 shares of BorgWarner common stock per Delphi Technologies share. Upon closing of the transaction, current BorgWarner stockholders are expected to own approximately 84% of the combined company, while current Delphi Technologies stockholders are expected to own approximately 16%.

In fiscal year 2019, BorgWarner and Delphi Technologies estimate that they generated $10.17 billion and $4.36 billion of net sales, respectively. Following the close of the transaction, the combined company is expected to be one of the leading pure-play propulsion companies globally, serving light and commercial vehicle manufacturers and the aftermarket. The combined company would offer a unique, more comprehensive portfolio of industry-leading propulsion products and systems across combustion, hybrid and electric, resulting in greater content per vehicle relative to BorgWarner today.
"This exciting transaction represents the next step in BorgWarner's balanced propulsion strategy, strengthening our position in electrified propulsion as well as our combustion, commercial vehicle and aftermarket businesses," said Frédéric Lissalde, President and CEO of BorgWarner. "Delphi Technologies will bring proven leading power electronics technologies, talent and scale that will complement our hybrid and electric vehicle propulsion offerings. As a combined company, we look forward to delivering enhanced solutions to our customers while driving increased value for our stockholders."

Mr. Lissalde added, "We have a great deal of respect for Delphi Technologies' team around the world and look forward to welcoming them to BorgWarner. We are confident that together we will be able to move faster to address market trends toward electrification."

"This is a compelling transaction that we are confident delivers clear benefits to our stakeholders," said Richard F. Dauch, CEO of Delphi Technologies. "Delphi Technologies' portfolio is highly complementary to BorgWarner's, and together we plan to create a pioneering propulsion technologies company uniquely equipped to serve OEMs and aftermarket customers around the world. BorgWarner's team shares our focus on addressing today's and tomorrow's challenges, and the combination will create exciting opportunities for our employees. We also expect our stockholders will benefit from the opportunity to participate in the future growth and upside potential of the combined company."

**BorgWarner Authorizes Share Repurchase Program**
BorgWarner today also announced that its Board of Directors has authorized a share repurchase program of up to $1 billion to be executed over the next three years. This is consistent with the company's historic approach to capital allocation and demonstrates confidence in its plan to deliver strong free cash flow generation over the long term. The timing and amount of any share repurchases will be based on market conditions, share price and other factors. Repurchases may be made in the open market or in privately negotiated transactions and may be made under Rule 10b5-1 plans.

**Timing and Approvals**

The BorgWarner/Delphi Technologies transaction is expected to close in the second half of 2020, subject to approval by Delphi Technologies' stockholders, the satisfaction of customary closing conditions and receipt of regulatory approvals.

(Emphasis in original).

**The Proxy Omits Material Information**

27.     On March 11, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Proposed Transaction is expected to close in the second half of 2020, so the Shareholder Vote is imminent. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

28.     First, the Proxy fails to provide enough information regarding financial projections. In particular, the Proxy fails to disclose: (i) all line items underlying Delphi's unlevered free cash flows and Adjusted EBITDA; and (ii) a reconciliation of all non-GAAP to GAAP metrics. Additionally, the Proxy completely omits financial projections for BorgWarner and the combined company.  Second, the Proxy fails to disclose material information regarding Goldman Sachs' financial analyses conducted for Delphi, BorgWarner, and the combined company.

29.     First, Defendants' failure to disclose all line items used to calculate unlevered free cash flows and Adjusted EBITDA, and failure to disclose the reconciliation of all non-GAAP to GAAP metrics renders the Proxy materially misleading.

30.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  With regard to future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities

laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the Company's projections relied upon by Goldman Sachs, but have omitted crucial line items and reconciliations.  Thus, Defendants' omission renders the projections disclosed on page 74 of the Proxy misleading.

31.     Further, the Proxy completely omits financial projections for BorgWarner and the combined company, despite Goldman Sachs' reliance on those projections in conducing the analyses for BorgWarner and the combined company.  Therefore, the Proxy is materially misleading to Delphi shareholders. Since Delphi shareholders will be entitled to receive BorgWarner common stock in exchange for their Delphi common stock upon consummation of the merger, Delphi shareholders are entitled to disclosure of the financial projections for BorgWarner and the combined company. Absent these disclosures, Delphi shareholders cannot make an informed decision on whether to vote in favor of the Proposed Transaction.

32.     Second, the Proxy omits material information regarding the financial analyses for Delphi, BorgWarner, and the combined company conducted by Goldman Sachs.

33.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for Delphi, the Proxy is materially misleading and incomplete because it fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 8.00% to 9.00%; (ii) the range of illustrative terminal values for Delphi; (iii) the inputs and assumptions underlying the illustrative terminal value to EBITDA multiple range of 4.0x to 5.5x for the Company; and (iv) the number of fully diluted outstanding Company shares. Proxy, 64-65. Moreover, Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* is based on unlevered free cash flows, yet the financial projections omit the critical line items used to calculate unlevered free cash flows as discussed above. *Id.* at 74.

34.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* for BorgWarner, the Proxy is also materially misleading and incomplete because it fails to disclose: (i)

the inputs and assumptions underlying the discount rates ranging from 6.25% to 7.25%; (ii) the range of illustrative terminal values for BorgWarner; (iii) the inputs and assumptions underlying the illustrative terminal value to EBITDA multiple range of 5.0x to 6.5x; and (iv) the number of fully diluted outstanding BorgWarner shares. *Id.* at 67. In addition, Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* is based on unlevered free cash flows, yet the Proxy does not disclose BorgWarner's financial projections, never mind its unlevered free cash flows.

35.     As for the *Illustrative Discounted Cash Flow Analysis* for the combined company, the Proxy is also materially misleading and incomplete because it fails to disclose: (i) the inputs and assumptions underlying the discount rates ranging from 6.25% to 7.25%; (ii) the range of illustrative terminal values for the combined company; and (iii) the inputs and assumptions underlying the illustrative terminal value to EBITDA multiple range of 5.0x to 6.5x of the combined company. *Id.* at 69-70. Moreover, Goldman Sachs' *Illustrative Discounted Cash Flow Analysis* is based on unlevered free cash flows, yet the Proxy does not disclose any financial projections for the combined company, never mind unlevered free cash flows for the combined company.

36.     These key inputs are material to Delphi shareholders, and their omission renders the summary of Goldman Sachs' Illustrative Discounted Cash Flow Analyses incomplete and misleading. As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006). Such choices include "the appropriate discount rate, and the terminal value…" *Id.* As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value. For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques. *This dazzling*

> *variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.* The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).   Without the above-mentioned information, Delphi's shareholders cannot evaluate for themselves the reliability of Goldman Sachs' Illustrative Discounted Cash Flow Analyses, make a meaningful determination of whether the implied equity value ranges reflect the true value of the companies or was the result of an unreasonable judgment by Goldman Sachs, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

37.    As for Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* for the Company, the Proxy is materially misleading because it fails to disclose: (i) the inputs and assumptions underlying the illustrative discount rate of 8.6%; (ii) the implied enterprise values for the Company; (iii) the inputs and assumptions underlying the Company's NTM EV/EBITDA multiples of 4.0x to 5.5x; and (iv) the fully diluted outstanding shares of the Company common stock. Proxy, 65.

38.    The *Selected Transactions Analysis* for the Company fails to disclose the number of fully diluted outstanding Company shares observed. *Id.* at 65-66.

39.    With regard to the *Premia Analysis*, the Proxy fails to disclose the all-stock acquisition transactions observed, as well as the acquisition premiums observed for each transaction. *Id.* at 66.

40.    As for Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* for BorgWarner, the Proxy is also materially misleading because it fails to disclose: (i) the inputs and assumptions underlying the illustrative discount rate of 8.4%; (ii) the implied enterprise values for BorgWarner; (iii) the inputs and assumptions underlying BorgWarner's NTM EV/EBITDA multiples of 5.0x to 6.5x; and (iv) the fully diluted outstanding shares of BorgWarner common stock. *Id.* at 67.

41.     Further, Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis* for the combined company is  materially misleading because it fails to disclose: (i) the inputs and assumptions underlying the illustrative discount rate of 8.4%; (ii) the implied enterprise values for the combined company; (iii) the inputs and assumptions underlying the combined company's NTM EV/EBITDA multiples of 5.0x to 6.5x; and (iv) the fully diluted outstanding shares of the combined company's common stock. *Id.* at 70.

42.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

43.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act.  Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote their shares in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## **CAUSES OF ACTION**

### **COUNT I**

#### **(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of

any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

46.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

47.     The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

48.     Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction.  Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company, for BorgWarner, and for the combined company; and (ii) the valuation analyses performed by Goldman Sachs in support of its fairness opinion.

49.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

50.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The

Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Goldman Sachs reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by Goldman Sachs, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review Goldman Sachs' analyses in connection with their receipt of the fairness opinions, question Goldman Sachs as to its derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

51.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

52.     Delphi is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

53.      The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

54.      Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

55.      The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Delphi, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

56.      Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

57.      In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.   The Proxy contains the unanimous

recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

58.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

59.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

60.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

61.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.      Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.      Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: March 17, 2020                                   **MONTEVERDE & ASSOCIATES PC**

                                                        By:   _/s/ Juan E. Monteverde_____
                                                              Juan E. Monteverde (JM-8169)
                                                              The Empire State Building
                                                              350 Fifth Avenue, Suite 4405
                                                              New York, NY 10118
                                                              Tel:(212) 971-1341
                                                              Fax:(212) 202-7880
                                                              Email: jmonteverde@monteverdelaw.com

                                                              *Attorneys for Plaintiff*